# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESUS QUINONES,

        Petitioner,

v.                                  No. CIV 02-776 MCA/LFG

TIM LeMASTER, Warden and
PATRICIA MADRID, Attorney General,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On July 2, 2002, Jesus Quinones ("Quinones") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  [Doc. 1.]  On August 9, 2002, Respondents filed their Answer. [Doc. 10.]  Subsequently, Quinones filed a "Motion in Response to Respondents Answer," "Supplemental Report, and a "Motion for Evidentiary Hearing."  [Docs. 11, 13, 14.]  Quinones also filed a number of other pleadings, all of which have been considered in making these recommendations.  [*See* Docs. 15, 16, 17, 18, 19, 22, 24.]  Based on the pleadings, the pertinent law,

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

and a review of the trial tapes and motion hearing tapes, the Court now recommends that Quinones'
§ 2254 petition by denied and that the case be dismissed, with prejudice.

2.     Quinones is at the State Penitentiary of New Mexico in Santa Fe.  His federal habeas
petition challenges the judgment and sentence entered by the Fifth Judicial District Court in State v.
Quinones, CR 2000-275 (County of Chaves, New Mexico).

3.     Quinones was charged with trafficking heroin, trafficking cocaine and conspiracy to
traffic heroin related to conduct on January 28, 2000.  [Ex. A to Answer.]  On December 6, 2000,
after hearing testimony for one day and deliberating for about one hour, a jury found Quinones guilty
of all three counts.  [Trial Tapes 1-8.]  Quinones was sentenced to a total of 33 years, all but 12 of
which were suspended.  [Ex. A. to Answer.]  Quinones was represented by attorney Jesse Cosby at
trial.

4.     In his July 2002 federal habeas petition, Quinones raises the following nine grounds
for relief:  (1) whether the trial judge erred in allowing prejudicial testimony from officers that was
unrelated to the case; (2) whether the trial court erred in not allowing Quinones to supplement the
record made available to the grand jury; (3) whether the New Mexico Supreme Court erred in not
remanding Quinones' certiorari petition to the state district court for a full hearing; (4) whether
Quinones' trial counsel, Jesse Cosby ("Cosby"), was ineffective for allowing prejudicial evidence to
be admitted against the defendant; (5) whether Cosby was ineffective for failing to secure Quinones'
due process rights; (6) whether Cosby violated the ethical code of conduct by failing to suppress
certain evidence; (7) whether Quinones' appellate counsel, Leonard Foster ("Foster") was ineffective;
(8) whether Cosby and Foster were ineffective for failure to provide Quinones with the necessary
documents and transcripts to allow Quinones to assist in his defense and post-conviction requests for

2

relief; and (9) whether Foster was ineffective for failure to raise all of the issues recommended by Quinones. [Doc. 1 and attachments.]

5.      In their Answer, Respondents deny Quinones' allegations and further assert that Quinones' petition presents a mixed petition containing both exhausted and unexhausted claims. *See* discussion on exhaustion *infra.*

## Factual Background

6.      In early 2000, the State was conducting an undercover drug operation in Chaves County. [Ex. C to Answer.]  Officer Paul Quesada was the primary officer assigned to the Chaves County Task Force.  As of January 2000, Quesada had been assigned to the narcotics division for about one month.  Sergeant Allyn Pennington was the primary supervising officer who oversaw Quesada's investigations and the task force activities.  [Id.; Trial Tape #2, 24:00.]

7.      Quesada testified at trial that on January 28, 2000, he went to the house of Andrew Montano to obtain narcotics and was introduced to Quinones.  Quesada further testified that Montano told Quesada that Quinones could obtain drugs for him.  Quesada drove his car while Quinones took him around Roswell, introducing him to third parties who sold drugs either to Quinones who provided the drugs to Quesada back in the vehicle, or directly to Quesada while Quinones was in the house with him.  [Trial Tape #2, 44:15; Tape 3, 44:00.]  After making two purchases of heroin and one of cocaine, Quesada dropped Quinones off at a motel before Quesada took the drugs to be tested.  [Trial Tape #3, 4:30.]  The undercover operation continued until about June 2000, at which point the suspects involved were apprehended. [Trial Tape #3, 14:00.]  The criminal complaint against Quinones was filed in June 2000.  [Trial Tape #4, 12:00.]  At trial, Quesada testified that he identified Quinones after the operation when he saw him incarcerated.  The

3

defense objected and requested a mistrial, which was denied.  [Ex. E to Answer; Trial Tape #4, 36:15.]

8.     Quinones testified at trial.  He claimed that he was at a motel with his girlfriend or fiancé, Helen Rodriguez[2], when the events concerning drug sales to Quesada allegedly occurred.  He also claimed that Officer Quesada provided him with controlled substances and that the two of them consumed controlled substances together.  According to Quinones, Officer Quesada later requested help from Quinones in setting up others and in procuring young girls with whom to party but that Quinones refused to assist Quesada.  Quinones testified that Officer Quesada implicated Quinones in drug trafficking in order to cover up Quesada's own unlawful activities.  [Trial Tape #6, 28:40.]

9.     Another issue raised both in pre-trial proceedings and at trial concerned the loss and destruction of police reports.  Prior to the June 30, 2000 preliminary hearing, Sgt. Pennington's surveillance report regarding Quesada's investigation was requested and but not made available as of the hearing date.  [Ex. E to Answer.]  The preliminary hearing was continued to July 27, 2000[3] so that Pennington could produce the report.  However, Pennington testified that his computer crashed in June 2000 and that any computer generated reports for Quesada's January 28 activities were lost. Pennington was able to locate his handwritten field notes of the January 28 investigation but prepared a "supplemental report" based on those notes.  He destroyed his field notes (prior to July 27),

---

[2]Ms. Rodriguez was initially charged as a co-conspirator, but the case against her was later dismissed due to a mistaken identity.  [Trial Tape #3 32:00.]

[3]The Court recognizes that Quinones filed a notice that the state record and tapes provided to the Court were incomplete in that the tapes of the June 30 and July 27 preliminary hearing proceedings were missing. However, based on trial testimony and lengthy discussions about this same issue by the trial court in other taped proceedings, these additional tapes are unnecessary to the resolution of Quinones' petition.

explaining that this was his general practice once he prepared a report.  [Trial Tape #6, 9:00; October 6, 2000 motion hearing Tape #2, 23:39.]

10.     Quinones filed a motion for sanctions because of Pennington's destruction of his field notes while under subpoena to appear at the July 27 preliminary hearing.  The defendant implied that the field notes must have contradicted the supplemental report although Pennington testified that the supplemental report reflected only what his field notes contained.  Quinones further argued that, without the field notes, he was unable to effectively impeach Quesada's written report which contained a number of inconsistencies or errors as to times when Quesada met with Quinones or third parties.  [October 6, 2000 Motion Hearing Tape, #1.]  The request for sanctions appears to have been briefed by the parties and rejected by the trial court.  Defense counsel further raised the issue at trial and again examined Pennington thoroughly regarding the destruction of his field notes.  [Trial Tape #6.]

### Procedural Background

11.     On March 8, 2001, Quinones filed a direct appeal of his conviction.  [Ex. B to Answer.]  His appeal raised the following five grounds:  (1) whether a mistrial should have been declared due to references to "uncharged conduct" of Quinones during the trial; (2) whether sanctions for lost police records should have been imposed on the State; (3) whether the court erred in admitting an expert chemist's testimony; (4) whether the affidavit attached to the criminal complaint was untrue and therefore, jurisdictionally defective; and (5) whether Quinones was denied effective assistance of counsel at trial for failure to call possible alibi witnesses.  [Ex. C to Answer.]  Attorney Cosby handled the appeal.

12.     On May 10, 2000, after considering all five grounds, the New Mexico Court of Appeals proposed affirmance of Quinones' convictions.  [Ex. D to Answer.]

13.     On August 8, 2001, Quinones filed a Memorandum in Opposition to Proposed Summary Affirmance.  [Ex. E to Answer.]  Attorney Leonard Foster handled the briefing from this point forward.

14.     On September 13, 2001, the New Mexico Court of Appeals issued a Memorandum Opinion, essentially tracking the language of its proposed disposition, and affirmed Quinones' convictions.  [Ex. F to Answer.]

15.     On October 4, 2001, Quinones filed a Petition for Writ of Certiorari in the New Mexico Supreme Court, in which he raised these three issues:  (1) whether a mistrial should have been declared for references to uncharged conduct by Quinones; (2) whether sanctions for lost police records should have been imposed on the State; and (3) whether the Court erred in admitting expert chemist testimony.   Quinones relied on the arguments and authorities submitted in his prior memorandum in opposition to the Court of Appeal's summary affirmance.  [Ex H to Answer.]

16.     On October 30, 2001, the New Mexico Supreme Court denied Quinones petition for writ of certiorari.  [Ex. I to Answer.]

17.     On May 2, 2002, Quinones, acting *pro se*, filed a state petition for habeas relief.  [Doc. J.]  Quinones raised the following grounds for relief:  (1) "whether trial counsel was ineffective in allowing prejudicial evidence against his client by failure to suppress such evidence"; (2) "whether trial counsel was ineffective in failure to secure his clients due process rights, creating prejudice"; (3) "whether trial counsel's actions violated his ethical code of conduct and duty to his client by failure to suppress prejudicial evidence"; (4) "whether appellate counsel was ineffective in failure to raise

issues on appeal once brought to their attention that client wanted raised on his appeal"; and (5) "whether trial judge abused his discretion in allowing prejudicial testimony from officer's that were unrelated to the case, creating prejudicial bias against the defendant."  [Id.]

18.    On the same day, May 2, 2002, the Fifth Judicial District Court denied Quinones' petition for habeas relief.  The State Court noted that Quinones raised five grounds alleging ineffective assistance of both trial and appellate counsel, and that Quinones asserted that the trial court abused its discretion in allowing testimony of uncharged conduct against the defendant.  The Court further stated that these grounds were all raised in Quinones' direct appeal and in the Petition for Writ of Certiorari, with the exception of the claim of ineffective assistance of appellate counsel. The Court determined after a review of the pertinent pleadings that there was no support for Quinones' allegation that appellate counsel was ineffective.  Thus, the Court denied Quinones' state habeas petition.  [Ex. K to Answer.]

19.    On June 3, 2002, Quinones, acting *pro se*, filed a Petition for Writ of Certiorari in the New Mexico Supreme Court.  [Ex. L to Answer.]  The 33-page handwritten petition for writ is not entirely clear as to which claims Quinones raised.[4]  The following matters were raised in the petition: (1) Whether the trial court erred in not allowing the defendant an evidentiary hearing to supplement record not made available to the grand jury.  In support of this claim, Quinones discusses the lost or destroyed police records for which he previously argued should have resulted in sanctions; (2) Whether the trial court erred in allowing prejudicial testimony and a false legal document, apparently referring to the affidavit attached to the criminal complaint; (3) Whether the trial court erred in

---

[4]Although Quinones claims he is mentally impaired and has undergone extensive shock therapy, virtually none of his post-conviction claims relate to alleged mental illness.

allowing prejudicial testimony from officers, unrelated to the case, creating prejudice and bias against Quinones, apparently referring again to testimony of uncharged conduct by Quinones; (4) Whether the trial court erred in allowing the prosecutor to make inflammatory statements about Governor Johnson's views on drugs during jury selection; (5) Whether the trial court erred in utilizing "a computerized selection" of jurors; (6) Whether the trial court erred in allowing the trial judge also determine Quinones' state post-conviction petition; (7) Whether the trial court erred in not allowing an evidentiary hearing to determine the claims of ineffective assistance of counsel at trial and during Quinones' appeal.  In addition to these matters, Quinones discussed the following grounds for relief: (1) ineffective assistance of counsel for allowing prejudicial evidence by failing to suppress evidence; (2) ineffective assistance of counsel for failure to secure Quinones' due process rights; (3) ethical violations by trial counsel by failure to suppress prejudicial evidence; (4) ineffective assistance of appellate counsel for failure to raise issues suggested by Quinones; and (5) ineffective assistance of counsel for failure to provide Quinones with pleadings and transcripts, and to obtain documents under the Freedom of Information Act, so that he could assist in his defense and post-conviction proceedings.  In Quinones' lengthy version of the trial and events leading up to the trial, he raised many additional arguments, including Double Jeopardy and Confrontation Clause violations, along with various claims of ineffective assistance of counsel.  [Ex. L to Answer.]

20.     On June 10, 2002, the New Mexico Supreme Court denied Quinones' Petition for Writ of Certiorari.  [Ex. M to Answer.]

# DISCUSSION

### I.   Exhaustion

21.     Respondents assert that all but one of the nine claims asserted by Quinones were exhausted.  They specifically argue that Quinones did not exhaust claim number 3 (as raised in the federal habeas petition) – whether the New Mexico Supreme Court erred in not remanding Quinones' certiorari petition to the state district court for a full hearing.  Because Quinones' lengthy *pro se* state petition for writ of certiorari is unclear and perhaps could be read to assert such a claim [Ex. L, at p. 2, ¶ 7], the Court cannot conclusively deem the claim unexhausted.  The exhaustion requirement is satisfied if a federal claim has been fairly presented to the state courts, and Quinones' petition for writ of certiorari <u>might</u> be sufficient to raise this claim.  28 U.S.C. § 2254(c); <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060 (1989) (internal citation omitted).

22.     However, even if the Court concluded that the claim were unexhausted, it agrees with Respondents that the claim can be addressed on the merits.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C.§ 2254(b)(2).  In other words, if the court is convinced that the unexhausted claim is without merit or that the issue is easily resolvable against the petitioner, the court may reach the merits of the claim rather than dismiss the petition for failure to exhaust.  *See* <u>Revilla v. Gibson</u>, 283 F.3d 1203, 1211 (10th Cir.) (complex issues of exhaustion may be bypassed if the claim may be disposed of in a straightforward fashion on substantive grounds), *cert. denied,* 123 S.Ct. 541 (2002); <u>Moore v. Schoeman</u>, 288 F.3d 1231, 1235 (10th Cir. 2002) ("Individual unexhausted claims may be denied, but only if the result allows the court to determine the *entire petition* on the merits").

23.     Here, the Court is convinced that the entire petition is easily resolvable against Quinones and that all of the claims should be addressed on the merits, including the claim that was possibly unexhausted.

## II.     Deference to State Court Adjudications

24.     A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), cert. denied, 531 U.S. 833, 121 S.Ct. 88 (2000).  "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  Thompson v. Oklahoma, 202 F.3d  283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan.10, 2000), cert. denied, 530 U.S. 1265, 120 S.Ct. 2725 (2000).

25.     Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state court's factual findings and legal determinations."  Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997).  The Tenth Circuit Court of Appeals recently explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case.  'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, the application must also be unreasonable.'  'In sum, § 2254(d)(1) places a

new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'  AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*relying on* 28 U.S.C. § 2254(e)(1)).

## III.   Decision on the Merits

26.     Before reaching Quinones' habeas claims, the Court must determine whether the state court adjudicated the claims on the merits.  Here, the Court of Appeals issued an opinion regarding some of Quinones' claims that clearly demonstrates that these claims were considered on the merits.  [Ex. F to Answer.]  With respect to his state habeas petition and his petitions for writ of certiorari, those requests were denied in summary fashion.  [Ex. I, K, M to Answer.]  However, the courts' orders denying his requests were not based on mere technicalities or procedural irregularities.  [Id.]  In denying his state habeas petition, the Fifth Judicial State Court noted that it had reviewed the pertinent pleadings.  [Ex. K to Answer.]  Moreover, there is authority for the proposition that a court's summary dismissal of a habeas petition constitutes an adjudication on the merits.  Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA to state court's rejection of claim's merit, despite lack of reasoning); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999), aff'd, 528 U.S. 225, 120 S.Ct. 727 (2000).  *See also* Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicates a cursory or haphazard review of a petitioner's claims).  Because the Court finds that the decisions rejecting Quinones claims were adjudications on the merits, Quinones' claims are subject to review under the standard set forth in 28 U.S.C. § 2254(d).

11

**IV.**     **Analysis of Quinones' Habeas Claims**

      *1.*     *Testimony from officers that was unrelated to the case*:

27.     Quinones claims that a mistrial should have been declared based on testimony from Officer Quesada that Quinones introduced Quesada to individuals who sold Quesada drugs. Quinones also asserts that Quesada's later identification of Quinones when he was incarcerated was prejudicial and should have resulted in a mistrial.  Quinones raised this same claim in his direct appeal and his state petition for writ of certiorari by arguing that the references during trial to "uncharged conduct" should have resulted in a mistrial.

28.     The New Mexico Court of Appeals concluded that the evidence relating to Quinones' introduction of Quesada to third parties who sold drugs to Quinones or Quesada on January 28, 2000, was not evidence of uncharged conduct, but rather evidence of the conduct for which Quinones was charged in this case.  In addition, the Court of Appeals found that any error in testimony made in front of the jury that Quinones was incarcerated on other charges when Quesada identified him in June 2000 were harmless and minuscule in view of other admissible evidence of Quesada's guilt. Thus, the Court of Appeals concluded that it was not unreasonable of the trial court to determine that a miscarriage of justice, sufficient to warrant a mistrial, had not taken place.  [Ex. F to Answer.]

29.     This Court cannot say that the Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented.  This seems particularly true in view of the taped transcript of the trial documenting Cosby's objection to Quesada's testimony about his identification of Quinones while incarcerated.  [Trial Tape #4, 36:15.]  While not entirely clear, it appeared that Quesada briefly referred to other criminal conduct for which Quinones may have been

incarcerated.  The trial court noted the objection by defense counsel but concluded that based on the testimony that came in, it seemed reasonable to concluded that a jury would believe that Quesada was referring to these charges rather than to other conduct.  Thus, Quinones' claim under ground 1 does not justify federal habeas relief and should be dismissed.

### 2.   *Supplementing the record made available to the grand jury:*

30.    Quinones raised this same claim in his pro se petition for writ of certiorari.  [Ex. L to Answer.]  In that petition, Quinones argued that certain records or transcripts were not provided to the grand jury.  [Id.]  Quinones did not identify any specific documents that he believed should have been presented to the grand jury, other than to argue that such unidentified records[5] should have been made available because of the state's destruction of field notes and loss of the original surveillance report after a computer crash.  Because of the reference to destroyed or lost police records, Quinones' claim here appears to be related to the same claim he raised on direct appeal and in his related petition for writ of certiorari, i.e., whether sanctions for lost police reports should have been imposed.

31.    The Court of Appeals considered this argument and rejected it finding that sanctions were warranted only when the deprivation of evidence prejudiced the defendant.  [Ex. F, p.4.]  There was no prejudice to the defendant since Pennington was able to reconstruct his surveillance report, provided that report to Quinones and was cross-examined on how the original was lost.  [Id., pp. 4-5.]

---

[5]In his petition for writ of certiorari, Quinones referred to documents in the "hands of the Federal Agency funding the Roswell Police Metro Gang and Drug Task force which were favorable to the Defendant."  [Ex. L to Answer, at p. 4.]  Quinones, however, failed to identify what favorable documents might have existed in the file.

32.     This Court again concludes that the state court's determination was neither contrary

to nor an unreasonable application of clearly established federal law.  In addition, in view of the facts

presented, the court's decision was not based on an unreasonable determination of the evidence

presented.  To the extent that Quinones claims documents, in addition to Pennington's original report

and field notes, should have been made available to the grand jury, without identification of the

"favorable" records, Quinones again fails to demonstrate any specific prejudice to him.  Thus, the

claim under Ground 2 does not warrant habeas relief and should be dismissed.

### 3.     *Remand for full hearing on Quinones' petition for writ of certiorari*:

33.     Quinones claims that the New Mexico Supreme Court committed error by not

remanding the matter before it for a full evidentiary hearing "under the Freedom of Information Act

[FOIA] for evidence at the hands of the Federal Agency who funded the operation."  [Doc. 1.]  This

claim, while not clearly exhausted, appears similar to the above discussed claim alleged under Ground

2  [Ex. L to Answer] and asserted in Quinones' petition for writ of certiorari.  In that petition,

Quinones argued that he should have been allowed an evidentiary hearing on his request to

supplement records under the FOIA, not made available to the grand jury.

34.     To the extent that this claim is the same discussed above in ¶ 30, the Court

recommends dismissal for the reasons stated therein.  If, however, Quinones is alleging a different

error by the New Mexico Supreme Court in failing to remand for an evidentiary hearing, that claim

cannot succeed.   "No federal constitutional provision requires a state to provide post-conviction

review, and any error in this regard is simply a matter of state law and not cognizable on federal

habeas review."  Weaver v. Ward, 18 Fed. Appx. 697, 698, 2001 WL 987546 (10th Cir. 2001)

(*relying on* Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir.), *cert. denied*, 525 U.S. 1024 (1998).

Thus, Quinones' claim under Ground 3 should be rejected and dismissed.

        **4.**      ***Ineffective assistance of trial counsel Jesse Cosby:***

       35.      The Court next addresses the claims of ineffective assistance of counsel relating to Crosby, raised under Grounds 4, 5, and 6 in the federal petition. Quinones argued that Cosby's performance was constitutionally defective for failing to prevent the admission of prejudicial evidence regarding Quinones, failing to secure Quinones' due process rights and violating the ethical code for failure to suppress certain evidence. [Doc. 1, claims 4, 5 and 6.] These three claims were raised by Quinones in his state petition for habeas relief and in his petition for writ of certiorari. They were rejected by the New Mexico Supreme Court, without discussion and/or by the trial court, with little discussion.

       36.      An accused has a Sixth Amendment right to assistance of counsel in a criminal prosecution, which includes the right to effective assistance of counsel at trial and on direct appeal. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64 (1984); Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836 (1985). "The essence of a claim of ineffective assistance is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582 (1986). "The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." Fisher v. Gibson, 282 F.3d 1283, 1290 (10th Cir. 2002) (internal citation omitted).

       37.      To establish ineffective assistance of counsel, Quinones carries the burden of making a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the

deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir.) (internal citation omitted), *cert. denied*, 123 S.Ct. 703 (2002).

38.    The Tenth Circuit re- emphasized that "the ultimate inquiry when deciding whether an attorney performed in a constitutionally deficient manner is not whether the counsel's actions can be considered strategic, but whether, under all the circumstances, counsel's action may be considered objectively reasonable." Bullock, 297 F.3d at 1041.

39.    The Tenth Circuit provided the following tools in analyzing the deficient performance prong:

> Two presumptions inform our objective reasonableness inquiry. First, we always start the analysis that an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct *might* have been part of a sound trial strategy. Second, where it is shown that a particular decision was, *in fact*, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'

Id. at 1046 (internal citations omitted).

40.    "The general presumption of objective reasonableness requires a petitioner to overcome the presumption that, under all the circumstances, the challenged action '*might* be considered sound trial strategy.'" Id. (internal citation omitted). The burden is on the petitioner to show that counsel's actions or inaction was not based on a valid strategic choice. Id. at 1047.

41.     In addition, scrutiny of counsel's performance must avoid the distorting effects of hindsight.  Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062, 116 S.Ct. 743 (1996).  In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied*, 522 U.S. 844, 118 S. Ct. 126 (1997).

42.     Quinones's claims fails first because his allegations of ineffective assistance of counsel do not identify any specific defective conduct.  Quinones argues generally that his due process rights were violated, that prejudicial evidence should have been suppressed, and that his attorney conducted ethical violations by not suppressing certain evidence.  Yet, Quinones provides little, if any, specific information that might tend to support these claims.[6]  Instead, the allegations are general and conclusory.  Conclusory allegations unsupported by specifics do not justify habeas relief based on ineffective assistance of counsel.  Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

43.     Quinones' ineffective assistance of counsel claims also fail because he cannot meet the first prong of the Strickland inquiry.  After a thorough review of the trial tapes from this one-day trial, it cannot be said that trial attorney Cosby's performance was constitutionally defective.  Cosby appeared to aggressively defend the charges against Quinones.  He made every effort to convince the Court to sanction the State for lost or destroyed police records.  Cosby raised this argument at trial as well, and thoroughly cross-examined Pennington about the records.  He also questioned Quesada

_____

[6]If he were able to present more specific information, the result most likely would be a duplication of the other claims already discussed or already dismissed by the New Mexico Court of Appeals.

aggressively about every possible inconsistency in Quesada's written reports of the January 28 investigation.   Cosby made several hearsay objections that the Court overruled "based on the circumstances."   The admission of the testimony was not through any fault of Cosby.

44.     Another issue raised by Quinones throughout the post-conviction proceedings was the court's decision to permit a chemist to testify about tests conducted by a different chemist.[7]   Again, Cosby objected to the testimony although his objection was overruled.   [Trial Tape 5, 27:10.] Moreover, Quinones failed to acknowledge that the chemist who tested the two quantities of heroin did testify.   Only the chemist testing the cocaine was not available to testify due to an injury or surgery.   Nonetheless, a chemist with 40 years of experience testified that he had reviewed the results of the other chemist's test of the cocaine and found that a typical analysis had been performed.   [Id., 27:10-38:00.]

45.     Quinones has not presented any evidence that might support a showing that Cosby's performance was constitutionally defective.   Thus, the claims under Grounds 4, 5 and 6 do not warrant habeas relief and should be dismissed.

---

[7]It is difficult to know whether this argument forms the basis of any of these general ineffective assistance of counsel claims, but it seems that Quinones may be contending that the admission of the chemist's testimony was a violation of his due process rights, or a violation of Cosby's ethical code to somehow attempt to suppress such evidence.

**5.** ***Ineffective Assistance of Appellate Counsel, Leonard Foster***:

46.      Quinones raises several arguments as to appellate counsel Foster's performance.  In Grounds 7[8], 8 and 9, he argues that Foster was ineffective generally, ineffective in failing to provide Quinones with necessary documents and transcripts so that Quinones could assist in his post conviction requests for relief and ineffective for failure to include in his appeal every issue recommended by Quinones.  [Doc. 1, Claims 7, 8 and 9.]  Quinones also asserts that trial counsel Cosby was ineffective for his failure to provide Quinones with the necessary documents or transcripts so that Quinones could assist in his defense.

47.      The ineffective assistance of counsel claim with respect to matters raised on appeal was included in Quinones' state habeas petition and specifically rejected by the district court.  The other ineffective assistance claims were raised in his petition for writ of certiorari.  All of the ineffective assistance claims, whether pertaining to performance by trial or appellate counsel, are analyzed under Strickland.  Hain v. Gibson, 287 F.3d 1224, 1230-31 (10th Cir. 2002), *cert. denied*, __ S.Ct. __, 2003 WL 167986 (Jan. 27, 2003); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995).

48.      Quinones' claims (Grounds 7 and 9) with respect to appellate counsel again suffer from a lack of specificity and are conclusory in nature.  In addition, this Court cannot conclude that the state court's denial of Quinones' claim that his appellate counsel's performance was deficient for failure to raise unidentified matters on appeal was contrary to or an unreasonable application of

---

[8]With respect to Ground 7, Quinones stated in his federal habeas petition that "[a]n electrical belt was placed around my waist during trial and I was told that if I object to my witnesses not being called, asked for any continuances or refuse to take the stand as ordered by my attorney that I the defendant would receive an electrical jolt that would send me to the floor . . . ."  [Doc. 1, p. 23 (unnumbered).]  While characterized as "claim 7," this argument seems to refer to the trial proceedings rather than to appellate counsel's performance and unbelievable in any event.

clearly established federal law.  When a movant argues that his appellate counsel failed to include an

issue for review on direct appeal, the merits of the omitted issue must first be evaluated.  *See* <u>Cook</u>,

45 F.3d at 392.  An appellate counsel is not required to raise every non-frivolous argument on appeal.

<u>Id.</u> at 394.  Here, Quinones has failed to identify what issues he believes should have been appealed,

and his claim cannot be further examined.  Quinones further fails to identify any constitutionally

defective performance on the part of Foster or that any failure to raise certain issues on appeal

prejudiced him.  Thus, the claims under Grounds 7 and 9 do not warrant habeas relief and should be

dismissed.

        49.      Quinones' last claim is that both appellate and trial counsel failed to provide him with

documents and transcripts so that he could assist in his defense and appeal.  There is no contention

that Quinones' attorney was denied trial transcripts.  Indeed, New Mexico electronically records all

criminal proceedings and these tapes are available to trial counsel.  Even if allegations that Quinones

was not provided trial tapes by his attorney are true, Quinones does not allege a deprivation of a right

guaranteed by the constitution or federal laws.  <u>McKee v. Page</u>, 435 F.2d 689, 691 (10th Cir. 1970)

(there is no right to trial transcripts for collateral appeals); *see also* 28 U.S.C. 2254(a).  In addition,

there simply is no evidence to support such a claim.  Quinones attached to his petition two letters

regarding requests for his trial transcripts or file.  These letters are both dated in January 2002, well

after Quinones' trial and appeal.  His appeal was decided as of September 2001, and his petition for

writ of certiorari was denied in October 2001.  Moreover, the letters to Quinones from the Public

Defender Department do not deny his requests.  Instead, they refer him to appellate counsel and/or

request a fee for copying.  [Doc. 1, attached letters.]  While Quinones inserts what appears to be his

own handwriting in one letter stating that Foster denied his requests for the transcripts, his conclusory

allegations are insufficient support for his claim.  Thus, the claim asserted in Ground 8 does not

warrant habeas relief and should be dismissed.

### **Recommended Disposition**

50.     That Quinones' § 2254 petition [doc. 1] by denied and that the case be dismissed, with

prejudice.


Lorenzo F. Garcia
United States Magistrate Judge